Both parties refer to the issue before us as whether paragraph 1(b) of the leases describes a "minimum" or a "maximum" mining requirement. To couch the issue in this manner (and particularly to discuss paragraph 1(b) in terms of the depth to which Drummond must mine) is confusing, at least to this judge. I believe this confusion results from the parties' failure to recognize, or at least to clearly articulate, that, properly read, paragraph 1(b) describes both theminimum and the maximum area where Drummond was required to mine. That is, insofar as what wasrequired of Drummond under the leases, paragraph 1(b) defines the area"specifically, the area on a horizontal plane" beneath which Drummond was required to mine all coal (subject of course to the qualification of economic recoverability and the other qualifications stated in paragraph 1).
It is true that paragraph 1(b) of each lease does contain a numerical, vertical measurement. As the main opinion points out, however, it is a vertical measurement of overburden, not coal. The effect of using this measurement is to guide the parties horizontally to the areas where Drummond was required to mine. It could have done so through the use of a metes-and-bounds description applicable to the surface of the property or by means of *Page 871 
an outline drawn on a surface map. Instead, paragraph 1(b) simply explains that Drummond is required to mine in those areas where the distance between the surface of the land and the top of the coal seam is less than a certain measurement.
What the leases do not do, at least not with a numerical measurement, is specify how deeply Drummond must mine within the specified area once it reaches the top of the coal seam. Instead, the leases provided that, in the areas where the overburden is not greater than the specified amount, Drummond is to mine all coal found within the identified seams that (a) is economically recoverable, (b) subject to the "best practices" and "prudent owner" standards found in paragraphs 1(a) and 1(c), respectively. On the record before us, there is no genuine issue of fact but that Drummond did this; therefore, summary judgment in its favor was appropriate as to any claim alleging that it failed to mine enough coal.
Consistent with the foregoing, paragraph 1(b) also does not prescribe a numerically measured depth, within each coal seam, beneath which Drummond was not permitted to mine. (Nor do the leases prescribe a horizontal dimension, other than the horizontal dimensions of the coal seam itself, beyond which Drummond was not permitted to mine.) It is for this reason that Drummond also was entitled to a summary judgment as to any claims that it exceeded some alleged limitation on the coal it could mine under the leases.
As to United's fraud claim, I fully concur in the well-reasoned analysis provided by the main opinion. In so doing, I wish to emphasize that that analysis does not involve an acceptance of the definition of "inventory" that was accepted by the trial court or an acceptance of the trial court's view of the undisputed nature of the evidence supporting that definition.